PAGES 1 - 16

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

SMITH-ANDERSON ENTERPRISES, INC.,  )
                                   )
          PLAINTIFF,               )
                                   )
  VS.                              ) NO. C16-1361 EMC
                                   )
                                   )  SAN FRANCISCO,
BOSTON EAST TYNGSBORO HOLDINGS     )  CALIFORNIA
LLC, D/B/A STONEHEDGE INN & SPA;   )
BOSTON EAST INDIA HOTELS LLC;      )
STONEHEDGE CELLARS LLC; AND        )
BENCHMARK WINE GROUP INC.,         )
          DEFENDANTS.              )  THURSDAY
                                   )  JUNE 30, 2016
_____  )  2:00 P.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**FOR PLAINTIFF:**          DICKENSON PEATMAN & FOGARTY
                           1455 FIRST STREET, SUITE 301
                           NAPA, CALIFORNIA 94559

                     BY:  CHRISTOPHER PASSARELLI, ESQ.

FURTHER APPEARANCES NEXT PAGE


*REPORTED BY:    KATHERINE WYATT, CSR 9866, RPR, RMR,*

**APPEARANCES:   (CONTINUED)**

**FOR DEFENDANT**S:          PRETI FLAHERTY
                            ONE CITY CENTER P.O. BOX 9546
                            PORTLAND, MAINE 04112
                      **BY:   JEFFREY D. TALBERT, ESQ.**

AND

                            FARELLA BRAUN + MARTEL LLP
                            235 MONTGOMERY STREET
                            SAN FRANCISCO, CALIFORNIA 94104
                      **BY:   RACHEAL TURNER, ESQ.**

**P R O C E E D I N G S**

**JUNE 30, 2016**                              **2:00 P.M.**

**THE CLERK:**  CALLING CASE 16-1361, SMITH-ANDERSON VERSUS BOSTON EAST.

COUNSEL, PLEASE COME TO THE PODIUM AND STATE YOUR NAME FOR RECORD.

**MR. PASSARELLI:**  GOOD AFTERNOON, YOUR HONOR.  CHRIS PASSARELLI FOR PLAINTIFF.

**THE COURT:**  THANK YOU, MR. PASSARELLI.

**MR. TALBERT:**  GOOD AFTERNOON. JEFF TALBERT FOR DEFENDANTS.

**THE COURT:**  GOOD AFTERNOON, MR. TALBERT.

**MS. TURNER:**  GOOD AFTERNOON, YOUR HONOR.  RACHEAL TURNER ALSO ON BEHALF OF DEFENDANTS.

**THE COURT:**  ALL RIGHT.  GOOD AFTERNOON, MS. TURNER.

ALL RIGHT.  WELL, THIS IS ABOUT JURISDICTIONAL DISCOVERY WHICH IS WITHIN THE COURT'S DISCRETION TO GRANT IF THERE ARE FACTUAL ISSUES THAT GIVE RISE TO A PLAUSIBLE CLAIM OF JURISDICTION.

I DON'T THINK THERE'S A PLAUSIBLE CLAIM FOR GENERAL JURISDICTION HERE UNDER THE DAIMLER CASE.  BUT IT'S A CLOSER CALL WITH RESPECT TO SPECIFIC JURISDICTION, INASMUCH AS THE PLAINTIFF ALLEGES THAT THE DEFENDANT STONEHEDGE CELLARS SOLD INFRINGING WINE IN CALIFORNIA, AND HAD A NAPA-BASED AGENT AND

RESELLER, AND IF THAT IS -- THAT'S DENIED, I THINK, RIGHT?

**MR. TALBERT:**  YES.

**THE COURT:**  SO ISN'T THAT A FACTUAL ISSUE THAT DESERVES AT LEAST SOME LIMITED FOCUSED DISCOVERY?

**MR. TALBERT:**  WELL, YOUR HONOR, I DON'T THINK IT DOES IN THIS CASE.  AS WE SUBMITTED TWO AFFIDAVITS ON MAY 2ND WITH OUR INITIAL OPPOSITION AND MAY 27 -- ACTUALLY, THE INITIAL MOTION FOR LACK OF PERSONAL JURISDICTION.

THERE ISN'T IN THIS CASE REALLY ANY CONNECTION BETWEEN MY CLIENT AND THE PRIOR OWNERS THAT WERE THE ONES THAT SOLD THE COLLECTION FROM STONEHEDGE TO BENCHMARK LITIGATION (SIC).  THAT'S LAID OUT IN THE AFFIDAVITS FAIRLY CLEARLY.

THE ONE INDIVIDUAL, LEVENT BOZKURT, WHICH IS -- PLAINTIFFS ALLEGED HAD SOME CONTINUING RELATIONSHIP WITH THE PLAINTIFFS AND THE NEW COMPANY THAT PURCHASED STONEHEDGE INN & SPA, IN THE AFFIDAVITS LAYS OUT THAT HE WAS NOT ON THE BOARD, NEVER JOINED THE BOARD DESPITE THERE BEING A NEWS ARTICLE THAT HE -- YOU KNOW, INSINUATING THAT HE MAY, IN FACT, BE INVOLVED WITH THAT COMPANY.

THERE REALLY IS NO ALLEGATION BY THE PLAINTIFFS -- FIRST OF ALL, THIS WASN'T AN ALLEGATION THAT WAS DEVELOPED IN THEIR COMPLAINT.  IT WAS SOMETHING THAT WAS MORE DEVELOPED IN THE MOTION FOR JURISDICTION.

SECONDLY, THEY DO NOT OUTLINE A MERE CONTINUATION THEORY, WHICH WOULD BE REQUIRED FOR FINDING A SUCCESSOR

LIABILITY CLAIM AGAINST MY CLIENT TO TIE THEM TO THE ACTS OF THE PRIOR OWNER.

IN PARTICULAR, THEY DO NOT ASSERT THAT THERE WAS ANY INADEQUATE COMPENSATION.  WE PUT AN AFFIDAVIT IN TO THAT EFFECT THAT THE LAND WAS PURCHASED FOR $4.25 MILLION.

EVEN IF THEY DID MAKE THAT ALLEGATION, I THINK THAT WE'VE LAID OUT ENOUGH IN THE AFFIDAVITS THAT THESE WERE REALLY SEPARATE COMPANIES.  AND AGAIN, NO -- REALLY NO -- IN THE AFFIDAVITS MR. DAS LAYS OUT THAT THERE WAS NO KNOWLEDGE OF THE SALE BY THE PRIOR COMPANY TO THIS BENCHMARK COMPANY.

SO EFFECTIVELY THESE CLAIMS REALLY ARE FOCUSED AGAINST THE PRIOR OWNER, AND I DON'T THINK THAT THERE'S ANYTHING THAT DEFENDANTS HAVE RAISED THAT WOULD CALL INTO QUESTION WHAT'S LAID OUT IN THE AFFIDAVITS AND WARRANT DISCOVERY ON THAT, ON THAT ISSUE.

**THE COURT:**  WELL, LET ME ASK.  I DO THINK THAT ANY CLAIM FOR SUCCESSOR LIABILITY IS A DIFFICULT CLAIM, BECAUSE AS I UNDERSTAND IT, THE SUCCESSOR STILL EXISTS.  I MEAN, THE PREDECESSOR STILL EXISTS.

**MR. TALBERT:**  YES.

**THE COURT:**  AND, GENERALLY, SUCCESSOR LIABILITY DOES NOT LIE ABSENT SOME SHOWING OF SOMETHING LIKE AN ALTEREGO-TYPE SHOWING OR THE PREDECESSOR HAS GONE OUT OF BUSINESS AND, THEREFORE, IT'S NOT FAIR TO LET THAT LIABILITY ESCAPE.

SO IT WOULD HAVE TO BE BASED ON THE MERITS OF THE

CURRENT OWNERS. BUT I THOUGHT THAT -- IS THERE NOT AN ALLEGATION THAT THE CURRENT OWNERS HAVE SOLD WINE WITH THE TRADEMARK-LABELED WINE OR ARGUABLY TRADEMARK-LABELED WINE IN CALIFORNIA?

MR. PASSARELLI: WE HAVE ALLEGED THAT THE DEFENDANTS ARE SELLING WINE UNDER THE MARK STONEHEDGE.

THE COURT: CURRENTLY.

MR. PASSARELLI: ON AN E-COMMERCE PLATFORM. THE DEFENDANTS HAVE CLAIMED THAT THAT IS ONLY AVAILABLE IN MASSACHUSETTS. WE HAVE ESTABLISHED THAT THE WEBSITE'S ACCESSIBLE IN CALIFORNIA.

WE'RE TALKING ABOUT A LIBRARY OF COLLECTION WINE. AND THESE ARE THE TYPES OF WINES THAT A COLLECTOR MIGHT SEEK OUT AND HAVE SHIPPED WITHIN MASSACHUSETTS, AND THEN BACK TO CALIFORNIA.

(THEREUPON, AN ALARM SOUNDED.)

THE COURT: WE WILL SEE WHERE THAT GOES, BUT SO IS THERE AN ALLEGATION THAT --

(THEREUPON, ANOTHER ALARM SOUNDED.)

THE COURT: OKAY. SO THE CURRENT OWNERS -- REMIND ME. THERE'S SO MANY PARTIES NOW. THE CURRENT OWNERS ARE THE STONEHEDGE DEFENDANTS. WHICH DEFENDANTS ARE THE CURRENT -- WHO ARE THE CURRENT OWNERS AT THIS POINT?

MR. TALBERT: SO IT'S BOSTON EAST TYNGSBORO HOLDINGS, WHICH IS THE MANAGEMENT COMPANY FOR BOSTON EAST HOTEL -- I'M

SORRY.  BOSTON EAST HOTELS IS THE MANAGEMENT COMPANY FOR BOSTON EAST TYNGSBORO HOLDINGS, WHICH OWNS AND RUNS THE INN, AND THEN STONEHEDGE CELLARS, WHICH IS THE WEBSITE THAT HE JUST REFERENCED.

**THE COURT:**  THAT'S THE CURRENT.

**MR. TALBERT:**  YES.  I MEAN, I THINK THAT'S ANOTHER NOTE ON THE SUCCESSOR LIABILITY ISSUE.  THEY DON'T REALLY SAY WHICH OF THOSE THEY BELIEVE TO BE THE SUCCESSOR.

BUT ON THE SALES ISSUE, I THINK WE HAVE AN AFFIDAVIT SAYING THAT WE, THE CURRENT OWNERS, HAVE NOT SOLD TO CALIFORNIA.  AND, IN FACT, THE WEBSITE THAT HE REFERENCES DOESN'T ALLOW SALES TO CALIFORNIA.  WHEN YOU GO TO PURCHASE THE WINE ON THE WEBSITE YOU HAVE TO PUT IN A MASSACHUSETTS ZIP CODE, OTHERWISE IT DOESN'T ALLOW YOU TO SELL.

ON THE FRONT PAGE OF THE WEBSITE IT SPECIFICALLY SAYS THAT THE WINE IS ONLY SOLD IN MASSACHUSETTS.  THE TWITTER ACCOUNT SAYS THE SAME THING:  "ONLY SELLING WINES IN MASSACHUSETTS."

THERE'S NOTHING BEEN PRESENTED THAT WOULD CONTROVERT THAT.

**THE COURT:**  AND IS THAT THE -- IS THE SOLE ALLEGATION OF SALES WITHIN CALIFORNIA OR TO CALIFORNIA BASED THROUGH WEBSITE SALES?  THERE'S NOT A CLAIM THAT THERE'S A CURRENT LICENSEE OR DISTRIBUTOR?

**MR. PASSARELLI:**  THERE IS, YOUR HONOR.  THE DEFENDANT

BENCHMARK WINE GROUP HAS BEEN SELLING STONEHEDGE-LABELED OR STICKERED WINE HERE IN CALIFORNIA THAT WAS PURCHASED FROM EITHER DEFENDANTS OR DEFENDANTS' PREDECESSOR OR BOTH.

AND WE'RE TALKING ABOUT 50,000 BOTTLES OF WINE THAT HAVE BEEN SOLD IN CALIFORNIA APPROXIMATELY OVER FOUR YEARS.  AND WE DON'T --

THE COURT:  IS THERE SOME INDICATION THAT SOME OF THOSE SALES THROUGH BENCHMARK OCCURRED WHILE THE CURRENT OWNER OR FROM THE CURRENT OWNER?

MR. PASSARELLI:  WE DON'T KNOW THE NATURE OF THE CONTINUING SALES OR WHETHER THE CURRENT OWNER -- THE CURRENT OWNER -- THE DEFENDANTS HAVE STATED THAT THE CURRENT OWNER IS UNAWARE.  BUT AS I PREVIOUSLY STATED, WE FIND IT HARD OR DIFFICULT TO UNDERSTAND HOW 50,000 BOTTLES WOULD HAVE BEEN SOLD WITHOUT THEIR AWARENESS OR AT LEAST TACIT AUTHORIZATION TO CONTINUE THE SALES WHILE THE STONEHEDGE DEFENDANTS ARE CONTINUING OPERATIONS, INCLUDING WINE SALES WITHIN THE STATE OF MASSACHUSETTS FEATURING CALIFORNIA WINES ON THEIR WEBSITE, FLYING OUT CALIFORNIA WINEMAKERS TO MONTHLY DINNERS SO ON AND SO FORTH.

AND IT IS INDUSTRY CUSTOM FOR COLLECTORS LIKE THIS TO COME OUT TO THE WINE INDUSTRY, TO THE WINE REGION IN ORDER TO CONDUCT BUSINESS WITH THEIR ACCOUNTS.

THE COURT:  DOES BENCHMARK --  DO THEY RESELL?  I MEAN, THEY BUY WHOLESALE AND THEN RESELL THEM?  THEY ARE NOT

LIKE JUST AN AGENT THAT TRANSMITS SALES OR REQUESTS?

**MR. PASSARELLI:**  I BELIEVE THAT THEY RESELL.

**THE COURT:**  SO IS IT POSSIBLE THAT -- THE TRANSFER OF THE BUSINESS OCCURRED IN 2014, '15?

**MR. TALBERT:**  AUGUST 1ST, 2014.

**THE COURT:**  SO IS IT POSSIBLE THAT ALL OF THE WINE FROM -- THAT BENCHMARK IS NOW SELLING WAS SOLD PRIOR TO AUGUST, 2014, OR IS THAT NOT --

**MR. TALBERT:**  YES, YOUR HONOR, THAT'S --

**THE COURT:**  OR WE DON'T KNOW?

**MR. TALBERT:**  NO.  WE PUT AN AFFIDAVIT IN TO THAT EFFECT.  THE CURRENT OWNER HAS SOLD NO WINE TO BENCHMARK, HAD NO CONTACT WITH BENCHMARK AND HAD NO KNOWLEDGE THAT THE PRIOR OWNER WAS GOING TO SELL THAT WINE TO BENCHMARK.  THEY KNEW THAT THAT WINE WOULD BE SOLD TO SOMEONE, BUT THAT WAS NOT SOMETHING THEY WERE INVOLVED IN.   AND THEN, AGAIN --

**THE COURT:**  SO THE CURRENTS OWNERS MAY NOT HAVE SOLD THE WINE TO BENCHMARK.

**MR. TALBERT:**  CORRECT.

**THE COURT:**  IS THERE ANY EVIDENCE THAT THE CURRENT OWNERS DID, OTHER THAN THE FACT THAT BENCHMARK STILL HAS WINE THEY ARE SELLING?

**MR. PASSARELLI:**  BENCHMARK HAS ADVERTISED THE SALE ONLINE IN A MANNER THAT IS CONSPICUOUS.  HAS ENGAGED IN PROMOTIONS THAT INCLUDE EARTHQUAKE RELIEF IN THE NAPA VALLEY

UNDER THE STONEHEDGE MARK, USING STONEHEDGE COLLECTION WINE

ORIGINATING FROM THE STONEHEDGE CELLARS IN MASSACHUSETTS.

THE COURT:  HOW DO WE KNOW THAT'S NOT JUST A LEGACY

FROM THE PRE-AUGUST 2014 STOCK SOLD BY THE PRIOR?

MR. PASSARELLI:  WE DON'T, YOUR HONOR.  AND WE DON'T

KNOW THE NATURE OF THE TRANSACTION, WHETHER IT WAS A STOCK

PURCHASE OR SOME OTHER TRANSACTION FOR THE CHANGEOVER FROM THE

STONEHEDGE INCORP.  AND LEVENT BOZKURT, ON THE ONE HAND, TO THE

STONEHEDGE DEFENDANTS ON THE OTHER.

MR. TALBERT:  WE TOLD THEM, YOUR HONOR.  WE PUT AN

AFFIDAVIT SAYING THIS WAS AN ASSET SALE, PURCHASED THE LAND.  NO

KNOWLEDGE OF THE PRIOR OWNER'S SALE.

THE EXHIBITS THAT THEY ATTACH TO MAKE THAT ALLEGATION

STATE THAT THE DATE WAS 2010, PRIOR TO OUR -- THE CURRENT

OWNERS.  AND IT DOES BEAR THAT COLLECTION. BUT EVERY INDICATION

IS THAT IT IS THE PRIOR OWNER.  AND, AGAIN, WE HAVE AN

AFFIDAVIT.  IT'S A VERY EASY THING FOR US TO ADDRESS, YOUR

HONOR, AND WE HAVE DONE SO.

THE COURT:  AND WHAT ABOUT THE WEBSITE?  IS IT TRUE

THAT YOU -- IF YOU ENTER A NON-MASSACHUSETTS WEBSITE YOU CAN'T

BUY OFF OF THE STONEHEDGECELLARS.COM WEBSITE?

MR. PASSARELLI:  THAT IS TRUE, YOUR HONOR.  HOWEVER,

IT'S NOT UNCOMMON FOR A COLLECTOR SEEKING A CERTAIN BOTTLE OF

WINE TO GO AHEAD AND PURCHASE THROUGH A STRAW PERSON OR SHIP TO

AN ALTERNATIVE ADDRESS IN MASSACHUSETTS.

**THE COURT:** AGAIN, WE'RE TALKING ABOUT DUE PROCESS AND PERSONAL JURISDICTION.  IF THAT HAPPENS, IF SOMEBODY SUBVERTS THE PROCESS, DOESN'T SEEM TO ME THAT'S A BASIS FOR PURPOSELY DIRECTED ACTIVITY OR INTENTIONALLY TARGETING CALIFORNIA.

I MEAN, MAYBE, MAYBE YOU KNOW THAT SOMEHOW IT'S GOING TO END UP THERE BECAUSE PEOPLE -- WELL, SOME PEOPLE COME IN THE STORE AND BUY IT OR BRING IT BACK.  OR SOME PEOPLE -- SO, YOU KNOW, IN ORDER TO JUSTIFY JURISDICTIONAL DISCOVERY, WHICH IS THE EXCEPTION AND NOT THE RULE, BUT IT CAN BE DONE, I'VE GOT TO HAVE SOMETHING THAT SHOWS THAT THERE IS SOME PLAUSIBLE SHOWING HERE. AND IF THE WEBSITE IS ONE OF THE SOURCES YOU RELY ON ON ITS FACE DOES NOT ALLOW SALES IN THE CALIFORNIA, AND IF BENCHMARK IS THE OTHER SOURCE, BUT THERE'S NO INDICATION THAT BENCHMARK IS CONTINUING, HAS CONTINUED TO BUY WINE STONEHEDGE-LABELED WINE FROM THE CURRENT DEFENDANT AFTER AUGUST 1ST, 2014 --

(THEREUPON, AN ANNOUNCEMENT INTERRUPTED PROCEEDINGS.)

**THE COURT:** I HOPE YOU ALL ARE AS RELIEVED AS I AM.

SO RIGHT NOW I'M NOT HEARING AT LEAST ENOUGH PLAUSIBLE EVIDENCE TO OPEN THIS DOOR.

**MR. PASSARELLI:** YOUR HONOR, IT'S NOT SIMPLY LIMITED TO DEFENDANTS' SALES IN CALIFORNIA OR LACK THEREOF.  THERE'S THE ISSUE OF MY CLIENT, THE PLAINTIFFS'S INDUSTRY PARTNERS AND CUSTOMERS.  THE WINERIES THAT PRODUCE THE WINES BEING SOLD BY THE STONEHEDGE DEFENDANTS ARE TRADE PARTNERS OF PLAINTIFFS.

SOME OF THE WINERIES FEATURED BY DEFENDANTS HAVE BEEN IN THE BULK WINE PURCHASE MARKET WITH PLAINTIFFS.  AND THERE'S THE EXACERBATION OF THE LIKELIHOOD OF CONFUSION DUE TO THE FACT THAT OUR CLIENT, STONEHEDGE, HAS HAD DEALINGS WITH SOME OF THE SAME PRODUCERS BEING SOLD BY THE STONEHEDGE DEFENDANTS.

THE COURT:  YES, I DON'T UNDERSTAND HOW THAT -- HOW THAT IS A TRADEMARK VIOLATION.  BY BUYING PRODUCT? BY PURCHASING PRODUCTS?

MR. PASSARELLI:  IN ADDITION TO SELLING COMPETING PRODUCTS UNDER THE LABEL "STONEHEDGE."

THE COURT:  WELL, THAT I UNDERSTAND IS A TRADEMARK, TRADITIONAL SORT OF TRADEMARK THEORY.  I GUESS I DON'T UNDERSTAND WHAT THE TRADEMARK THEORY IS.

MR. PASSARELLI:  THE DEFENDANTS, THEY PUT THEMSELVES OUT AS BEING CONNECTED TO CALIFORNIA IN THEIR ADVERTISING AND PROMOTION.  THEIR TWITTER FEEDS ON SOCIAL MEDIA AND WEBSITE FEATURE CALIFORNIA WINES HAS A DISCREET --

THE COURT:  YOU'RE SAYING THESE PARTNERS ARE SUBJECT TO LIKELIHOOD OF CONFUSION?  WHEN THEY DEAL WITH STONEHEDGE IN MASSACHUSETTS THEY THINK THEY ARE DEALING WITH THE CALIFORNIA STONEHEDGE?

MR. PASSARELLI:  YES, YOUR HONOR, POTENTIALLY.  BUT NOT ONLY THAT --

THE COURT:  IS THAT ALLEGED?  WHERE IS THAT?

MR. PASSARELLI:  I BELIEVE THAT'S IN OUR MOTION, OUR

MOVING PAPERS THAT SOME OF THE COMPETING WINERIES THAT ARE FEATURED ON DEFENDANTS' WEBSITE ARE ALSO TRADE PARTNERS OF PLAINTIFF.  AND THAT THERE IS AN EXACERBATION OF LIKELIHOOD OF CONFUSION.  NOT JUST THE TRADITIONAL SALES OF PRODUCTS LABELED "STONEHEDGE," BUT THE SALES OF COMPETING PRODUCTS.  AND SOME OF THOSE COMPETITORS ARE NOT SIMPLY COMPETITORS IN THE MARKET, BUT IN THE BULK WINE MARKETS THOSE ARE CUSTOMERS OR PLAINTIFF IS CUSTOMER OF SOME OF THOSE ENTITIES.

AND SO THERE'S A REAL INCREASED LIKELIHOOD OF CONFUSION FROM PLAINTIFF'S STANDPOINT.  NOT ONLY THAT, BUT WE BELIEVE THAT DEFENDANTS AFFIRMATIVELY REACH OUT TO CALIFORNIA WINEMAKERS AND FLY THEM OUT TO BOSTON TO HAVE MONTHLY WINE DINNERS.

**MR. TALBERT:**  YOUR HONOR, WE'VE ALSO ADDRESSED SINCE THAT ALLEGATION THAT FORM THE BASIS OF JURISDICTION, WHICH I DON'T NECESSARILY AGREE, BUT IN OUR AFFIDAVIT WE STATE VERY CLEARLY THAT BOSTON EAST DOES NOT REACH OUT DIRECTLY TO CALIFORNIA WINE COMPANIES.  THEY GO THROUGH A DISTRIBUTOR.  THE DISTRIBUTOR, AMONG OTHER TYPES OF WINE THAT THEY SELL FROM OTHER, YOU KNOW, COUNTRIES, AS WELL, WILL BUY SOME CALIFORNIA WINES.  BUT THESE ARE DONE THROUGH A DISTRIBUTOR THAT WILL PURCHASE THE WINE AND SELL IT TO THE STONEHEDGE.  I MEAN, BUYING WINE IS IN OUR VIEW NOT ENOUGH.  ADVERTISING THAT ON THE WEBSITE THAT WE HAVE CALIFORNIA WINES WE'RE MAKING CLEAR THAT IT'S ONLY AVAILABLE IN MASSACHUSETTS.  SHOULDN'T BE ENOUGH TO SUBJECT

SOMEONE TO PERSONAL JURISDICTION.

**THE COURT:**  WELL, WHAT'S YOUR ANALYSIS OF THE THEORY, OF THE TRADEMARK THEORY THAT'S BEEN ARTICULATED?

**MR. TALBERT:**  I DON'T THINK, A:  THAT THAT'S BEEN ALLEGED IN THE COMPLAINT.  TO THE EXTENT IT'S IN THE MOTION IT'S VERY CONVOLUTED AND NOT VERY CLEAR.  AND, AGAIN, I DON'T SEE HOW PURCHASING CALIFORNIA WINE THROUGH A DISTRIBUTOR AND SELLING ONLY IN MASSACHUSETTS UNDER THE NAME "STONEHEDGE" WHICH THEY HAVE BEEN OPERATING SINCE 1988 IS A TRADEMARK VIOLATION.  BUT, CERTAINLY, IT DOESN'T -- IT WOULDN'T BE ENOUGH FOR PERSONAL JURISDICTION, I WOULDN'T THINK, HERE IN CALIFORNIA.

**THE COURT:**  SO THE CLAIM IS THAT BECAUSE IT'S STONEHEDGE CELLARS, IT'S SELLING CALIFORNIA WINE.  THEY ARE NOT SELLING WINE LABELED "STONEHEDGE," JUST SELLING CALIFORNIA WINE IS CAUSING CONFUSION?  IS THAT THE THEORY?  I'M NOT SURE I UNDERSTAND.

**MR. PASSARELLI:**  YES.  BUT IN ADDITION TO THAT, THERE IS SOME WINE THAT DEFENDANTS HAVE SOLD THAT HAS STICKERS SAYING "STONEHEDGE COLLECTION," I BELIEVE, ON IT THAT WERE BEING SOLD BY BENCHMARK.

**THE COURT:**  THAT'S WHERE WE START OFF.  I MEAN, THAT THEORY I UNDERSTAND.  THEY ARE SELLING STONEHEDGE WINE IN CALIFORNIA, ALLEGEDLY IN VIOLATION OF THE MARK OF CALIFORNIA.  THEN I COULD SEE YOU ARE GOING INTO THE SAME MARKET AND YOU COULD CAUSE CONSUMER CONFUSION, ET CETERA, ET CETERA.

THE PROBLEM I HAVE THERE IS THAT THERE'S NO EVIDENCE THAT THE CURRENT OWNER HAS DONE THAT IN A WAY THAT WOULD SUBJECT THEM TO PERSONAL JURISDICTION. AND THEN, YOU SAID:

"WELL, BUT THEY ALSO BUY WINE. THEY SELL THROUGH THEIR CELLAR WINES FROM CALIFORNIA. THEY FLY OUT -- THEY HAVE A LOT OF DEALINGS WITH CALIFORNIA."

BUT THAT'S CAUSALLY RELATED TO THE SELLING OF -- THE ALLEGED SELLING OF THEIR WINE. IF THEY BUY OTHER WINE BRANDS AND SELL IT IN THEIR CELLAR, IN THEIR OPERATIONS AT THE INN THAT'S IN MASSACHUSETTS, THAT SEEMS LIKE A LONG SHOT TO THINK THAT PEOPLE ARE GOING TO SOMEHOW CONFUSE THAT 3,000 MILES AWAY, WITH THE MARK HERE IN CALIFORNIA.

AND I DIDN'T SEE THAT. MAYBE I MISSED IT. I DIDN'T SEE THAT. I THOUGHT THE COMPLAINT WAS REALLY ABOUT SALE OF WINE WITH A MARK ON IT, NOT JUST OTHER WINES USING "STONEHEDGE CELLAR."

BUT MAYBE -- DID YOU ALLEGE THAT IN YOUR COMPLAINT?

**MR. PASSARELLI:** I BELIEVE WE ALLEGED THAT THERE ARE SALES OF BOTH NATURES.

**THE COURT:** OKAY. WELL, I DON'T THINK THERE'S ENOUGH HERE TO WARRANT DISCOVERY. WE'RE GOING TO HAVE TO RULE ON WHATEVER INFORMATION YOU HAVE AT THIS POINT. IT SEEMS TO ME IT LOOKS LIKE A THIN REED, BUT I WILL CONSIDER IT WHEN WE GET TO THE SUBSTANCE OF THE MOTION.

**MR. TALBERT:**  THANK YOU, YOUR HONOR.

**THE COURT:**  ALL RIGHT?  THANK YOU.

**MR. PASSARELLI:**  THANK YOU, YOUR HONOR.

(THEREUPON, THIS HEARING WAS CONCLUDED.

STENOGRAPHY CERTIFICATION

"I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER." JULY 17, 2016 KATHERINE WYATT